IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION


RAYMOND L. LEE, JR., et al.,

                        Plaintiff,                 Case No. 3:09 CV 766

      -vs-

                                         <u>MEMORANDUM   OPINION</u>

COUNTRYWIDE HOME
LOANS, INC., et al.,

                      Defendant.

KATZ, J.

This matter is presently before the Court on several motions and cross-motions for summary judgment.  Defendants Countrywide Home Mortgage, Inc. and Bank of America, N.A.[1] (collectively "Countrywide") have moved (Docs. 47, 48, 59) for summary judgment as to all claims against them.  The two plaintiffs in this action, Raymond Lee and Janet Lee, who are husband and wife, have filed a cross-motion (Doc. 69) for summary judgment against Countrywide and partial summary judgment against defendant NGRM, LLC (which will hereinafter be referred to by its business name of Stonefire Mortgage or "Stonefire").  Stonefire, in turn, has filed a cross-motion (Doc. 75) for summary judgment as to all claims against it.  Finally, defendant Kim Deal has moved for summary judgment (Doc. 78) as to all claims against her.  The motions have all been fully briefed and are ready for decision.

---

[1] Bank of America's presence as a defendant in this case is due to its status as successor by merger to the former Countrywide Bank, N.A.; there is no meaningful difference for present purposes between its own liability and that of defendant Countrywide Home Mortgage. Therefore, the analysis applicable to Countrywide is equally applicable to Bank of America.

For the reasons stated below, Countrywide's motion for summary judgment will be granted, Stonefire's cross-motion for summary judgment will be granted in part and denied in part, and the remaining motions will be denied.[2]

## I. Background

Since May 10, 2005, the Lees have been joint owners of property in Walbridge, Ohio, where they reside.  Stonefire is a mortgage broker licensed under Chapter 1322 of the Ohio Revised Code.  On November 8, 2006, the Lees met with Jeff Winke, a real estate broker with Stonefire, to discuss refinancing their existing mortgage loan, which had been entered into with Sky Bank as the lender.

The meeting was arranged by Kim Deal, another Stonefire employee who had contacted the Lees earlier to solicit their business.  Deal had told the Lees that, by refinancing, they could lower their interest rate and mortgage payment, get rid of their private mortgage insurance, and consolidate around $20,000 in credit card debt. At their subsequent meeting, Winke reaffirmed these representations, and the Lees agreed to go forward with the refinancing with Stonefire as their representative.  Winke then presented the Lees with several documents for their signature. The Lees did not read the documents before signing them.

Among the documents signed at this meeting was a "Mortgage Broker Business Disclosure". As is relevant for present purposes, that document contained the following language:

---

[2]

Countrywide has also moved (Doc. 70) to strike the affidavit of Edward McCabe, attached as an exhibit to plaintiffs' response (Doc. 63) to Countrywide's motion for summary judgment.  In support, Countrywide argues that it was unfairly denied the opportunity to depose McCabe because plaintiffs did not make timely of disclosure their intention to rely on McCabe's testimony. The Court has taken account of McCabe's affidavit testimony in considering the pending motions, and has determined that Countrywide is entitled to summary judgment in its favor even if McCabe's affidavit is admitted.  Therefore, the motion to strike (Doc. 70) is denied as moot.

2

3. MORTGAGE BROKERAGE FEE

In consideration of Borrower's agreement to pay a mortgage loan brokerage fee plus actual costs incurred in connection with the loan, Business agrees to work to provide a bona fide Commitment in accordance with the terms and conditions set forth herein, or such terms and conditions as Business may subsequently be able to provide based on commitments it receives from Lenders . . . . Borrower hereby agrees, when Borrower's Loan is closed and the proceeds of the mortgage loan have been disbursed, to pay the actual costs as estimated herein, and to pay Business a mortgage brokerage fee of $7000.00 and a processing fee of $995, paid to Lender or an affiliated Provider, at Lender's choice. Additionally, Borrower acknowledges that Business may receive additional compensation from Lender based on the mortgage program and terms Borrower has engaged Business to obtain in securing the commitment and that Business will receive a sum in range of 0% to 5% of the total loan amount. This additional compensation, the exact amount of which will be disclosed at the time of closing, is part of the total brokerage fee due Business. In no event will the brokerage fee, additional compensation included, exceed the maximum fee permitted by applicable law.

On December 4, 2006, Countrywide sent Janet Lee her initial disclosures in connection with the loan application.

The closing of the Lees' loan took place on December 20, 2006. At the closing, Janet Lee signed a final HUD-1 settlement statement.  The settlement statement mentioned a "Third Party Processing Fee to Granite Processing" of $1295, and a "Premium pd to broker by lender to Stonefire Mortgage" of $5670 POC ["paid outside closing"].  Both Raymond and Janet Lee signed a Notice of Right to Cancel at the closing acknowledging their "receipt of two copies of NOTICE OF RIGHT TO CANCEL and one copy of the Federal Truth-in-Lending Disclosure Statement" (emphasis in original).  Also, the Lees both signed a final Truth-in-Lending Disclosure.

In connection with the origination and closing of the loan, the Lees dealt with Stonefire and its representatives, and had no direct communication with representatives of Countrywide.

**II. Summary Judgment Standard**

Pursuant to Federal Civil Rule 56(c), summary judgment is appropriate where there is "no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." *Id*.  When considering a motion for summary judgment, a court must draw all inferences from the record in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A court is not permitted to weigh the evidence or determine the truth of any matter in dispute; rather, a court determines only whether the case contains sufficient evidence from which a jury could reasonably find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

## III. Discussion

### A. *Claims Against Countrywide*

### 1. Truth-in-Lending Act

The first issue raised by Countrywide's summary judgment motion is whether the Lees have adduced sufficient evidence to create a jury question as to whether they each received two copies of the Notice of Right to Cancel, as required by the Truth-in-Lending Act (TILA). If the Lees did receive two copies of the Notice of Right to Cancel, their claim for rescission under the TILA must fail as a matter of law.

The TILA provides that the Lees' signed acknowledgment of receipt of two copies of the Notice of Right to Cancel creates a "rebuttable presumption of delivery." 15 U.S.C. § 1635(c). This presumption imposes on the Lees "the burden of going forward with evidence to rebut or meet the presumption."  Fed. R. Evid. 301.

The question then becomes whether the Lees' own *post hoc* denial of receipt, in affidavit testimony, is sufficient to meet their burden.  The Sixth Circuit has held that it is not. See *Sibby v. Ownit Mortgage Solutions, Inc.*, 240 Fed.Appx. 713, 717 (6th Cir. July 6, 2007).

The Lees insist, however, that the affidavit of Edward McCabe, the Notary Signing Agent at the Lees' closing, changes the analysis.  But, according to his own affidavit, McCabe does not have "any recollection" of the Lees' closing, and his affidavit is not fairly read to suggest that either of the Lees did not receive two copies of the Notice of Right to Cancel.

Instead, McCabe's affidavit supports the theory, pressed by the Lees, that the title company subsequently printed Raymond Lee's name underneath his signature after he signed the Notice of Right to Cancel.  But both of the Lees admit signing the Notice of Right to Cancel beneath the clause acknowledging their receipt of the documents at issue, and the fact that the title company might have subsequently typed Raymond Lee's name below his signature is of no relevance to the question of whether he signed in the first place or whether he received complete copies of these documents.

Summary judgment is therefore granted to Countrywide on the TILA claims.

## 2. Common-Law Fraud

The next issue is whether Countrywide's concealment of its agreement to pay a Yield-Spread Premium (YSP) (essentially an enhanced finders' fee paid by the lender to the broker) to Stonefire may support a claim for common-law fraud.

The elements of common-law fraud are: "(a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true

or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance." *Gaines v. Preterm-Cleveland, Inc.*, 33 Ohio St.3d 54, 55 (1987).

The Ohio courts have held that "a creditor and consumer stand at arm's-length in negotiating the terms and conditions of a consumer loan" and thus, "absent an understanding by both parties that a special trust and confidence has been reposed in the creditor, the creditor has no duty to disclose to the consumer the existence and details of a finder's fee or similar arrangement with a credit arranger." *Blon v. Bank One, Akron, N.A.*, 35 Ohio St. 3d 98, 102 (1988). Because the facts of this case disclose an ordinary creditor-debtor relationship between the Lees and Countrywide, Countrywide had no obligation to disclose the YSP arrangement to the Lees.

Therefore, Countywide is entitled to summary judgment in its favor on the Lees' common-law fraud claim.

**3. Civil Conspiracy**

The final claim against Countrywide is for civil conspiracy. The Lees allege that Countrywide conspired with the broker, Stonefire, in order to further Stonefire's breach of its fiduciary duties and acts of fraud against the Lees.

The elements of a civil conspiracy claim under Ohio law are: "(1) a malicious combination; (2) [of] two or more persons; (3) injury to person or property; and (4) existence of an unlawful act independent from the actual conspiracy." *Universal Coach, Inc. v. New York City Transit Auth., Inc.*, 90 Ohio App.3d 284, 292 (1993). The requirement of malicious combination to injure "does not require a showing of an express agreement between defendants, but only a

6

common understanding or design, even if tacit, to commit an unlawful act." *Gosden v. Louis*, 116 Ohio App.3d 195, 219 (1996).  In proving this element, " 'it is sufficient that the parties in any manner come to a mutual understanding that they will accomplish the unlawful design.' " *Id.*, quoting *Pumphrey v. Quillen*, 102 Ohio App. 173, 178 (1955).

Civil conspiracy does not require the existence of a duty on the part of the alleged co-conspirator. See *Williams v. Aetna Finance Co.*, 83 Ohio St.3d 464 (1998). Rather, there must simply be evidence of a common understanding or design to commit an unlawful act.

In this case, the record is devoid of evidence that Countrywide or any of its agents directly interacted with the Lees as to their refinancing, or that Countrywide was in any way aware of the acts of misrepresentation and concealment that form the basis of the Lees' claims against Stonefire.  Although the Lees point out that payment of YSP to Stonefire inured to Countrywide's advantage, and that Countrywide undoubtedly was aware of the YSP arrangement, these facts alone do not suggest that Countrywide was aware that Stonefire had unlawfully induced the Lees' agreement to the YSP clause. Cf. *Myer v. Preferred Credit, Inc.*, 117 Ohio Misc.2d 8, 766 N.E. 2d 612, 630 (C.P. 2001) ("Under federal law, yield-spread premiums are neither per se legal nor illegal; their legality depends upon whether they are actually earned in exchange for services and whether they are disclosed at the time of loan application and again at the time of closing."). Under these circumstances, the evidence is insufficient to support a jury finding that Countrywide conspired with Stonefire to commit an unlawful act.

The case of *Williams v. Aetna Finance Co.*, 83 Ohio St.3d 464 (1998), is distinguishable. In that case, the Ohio Supreme Court upheld a civil conspiracy verdict against a lender on the basis of the lender's conspiring in the fraudulent acts of a third-party "pitchman."  In doing so,

7

however, the *Williams* Court relied on testimony from the lender's own employees suggesting that they had specific knowledge of the "pitchman"'s fraudulent activities. See *id*. at 869.  In the present case, by contrast, there is no evidence that Countrywide or its employees had any knowledge that Stonefire was concealing or misrepresenting the terms of mortgage loans to its clients.

Instead, this case is more analogous to *Pumphrey v. Quillen*, 102 Ohio App. 173 (1955), where the Ninth District found the evidence insufficient to support a civil conspiracy verdict against two sellers of real property on the basis of fraudulent misrepresentations made by a realtor. In so holding, the *Pumphrey* Court relied on the fact that the sellers "were in complete ignorance of any representations made by [the realtor] to his clients." *Id*. at 178.  It appears from the record that Countrywide was just as ignorant of Stonefire's representations to the Lees in this case.

To impose liability on Countrywide under these circumstances, moreover, would potentially require a lender to directly monitor a vast number of loan transactions to ensure a third-party broker's compliance with its fiduciary obligations.  The result would be to increase the expense and inconvenience of such transactions, to the detriment both of potential borrowers as well as potential lenders.

Indeed, Ohio law specifically exempts a "wholesale lender", defined as "a company that has been issued a mortgage broker certificate of registration and that enters into transactions with buyers exclusively through unaffiliated third-party mortgage brokers", from many of the fiduciary obligations ordinarily applicable to mortgage brokers.  See Ohio Rev. Code § 1322.081(B).  This exemption would appear to be of little practical benefit if a "wholesale lender" could avoid civil conspiracy liability only by actively policing the conduct of the third-party mortgage broker.

8

Thus, Countrywide is entitled to summary judgment on the Lees' civil conspiracy claims. This conclusion mandates that summary judgment be granted in favor of Stonefire on the civil conspiracy claim as well, as civil conspiracy requires proof of an agreement between two or more parties.

**B. Claims Against Stonefire and Deal**

The Court next considers the Lees' claims against Stonefire and its representative, Deal, for breach of fiduciary duty, fraud, and violation of the Ohio Mortgage Brokers Act.[3]

It is well settled that "[a] mortgage broker has a fiduciary duty to his or her client." *Swayne v. Beebles Investments, Inc.*, 176 Ohio App.3d 293, 306 (2008). These duties cannot be waived or modified. Ohio Rev. Code § 1322.081(C). A mortgage broker's fiduciary obligation means that "the determination of whether certain acts toward his employer are fraudulent or deceitful is not evaluated according to the same legal standard applicable to acts of persons who deal at arm's length". 65 Am. Jur. Proof of Facts 3d 109 § 1.

The principles underlying the common-law fiduciary duty of a mortgage broker to his client have ancient roots. "In law, as in morals, it may be stated that, as a principle, no servant can serve two masters, for either he will hate the one and love the other, or else he will hold to the one and despise the other." *Bell v. McConnell*, 37 Ohio St. 396, 399 (1881) (citing Luke, 16, 13). Therefore, "[t]he law is strict in seeing that a fiduciary shall act for the benefit of the person to whom he stands in a relation of trust and confidence and in maintaining the trust free from the pollution of self-seeking on the part of the fiduciary." *Myer v. Preferred Credit, Inc.*, 117 Ohio

---

[3]
Because "the law regards virtually all acts in breach of the broker's fiduciary duties as fraudulent", 65 Am. Jur. Proof of Facts 3d 109 § 1, the Court will discuss the breach of fiduciary duty claim and fraud claim interchangeably.

Misc.2d 8, 766 N.E. 2d 612, 624 (C.P. 2001) (quoting 49 Ohio Jurisprudence 3d (1984) 191, Fiduciaries, Section 94). "Thus, an agent may not, acting as such, make a secret personal profit out of any transaction wherein he acts, or should act, for his principal." *Id*.

Applying these principles, the Ohio courts have held that "without advance full disclosure [a YSP arrangement] by definition constitutes both a breach of the fiduciary's duty of full disclosure and good faith and loyalty." *Myer*, 766 N.E. 2d at 631. As explained by the *Myer* Court, "[d]espite the fact [a YSP] payment in form is made by the lender to the broker, in substance it comes to rest upon the principal." *Id*. That is because the broker's YSP payment is contingent on the broker convincing the borrower to accept a higher interest rate from the lender than the borrower otherwise could obtain.

In this case, the Lees claim that Stonefire and Deal violated their fiduciary duty by misrepresenting and concealing key facts relating to the loan transaction, including the existence of the YSP arrangement. Stonefire and Deal contend that several documents in the record show that the Lees gave their informed consent to all aspects of the transaction. But the Court finds that there is sufficient evidence in the record to support a jury finding that the Lees did not give their informed consent to the brokerage fee in this case, and that Stonefire and Deal otherwise breached their fiduciary duties to them.

Stonefire and Deal make much of the fact that the Lees signed the "Mortgage Broker Business Disclosure" at their initial meeting with Winke, as well as the HUD-1 settlement statement at closing, and that both of these documents alluded to the YSP. Yet the "Mortgage Broker Business Disclosure" provided that "the exact amount" of any "additional compensation" would "be disclosed at the time of closing," and the Lees' deposition and affidavit testimony is

10

consistent in alleging that Deal, at closing, represented that Stonefire was waiving its fees. Moreover, the cryptic allusion to a "[p]remium pd to broker by lender to Stonefire Mortgage" in the HUD-1 settlement statement might not have placed even a sophisticated borrower on notice of the YSP arrangement.  Cf. *Myer*, 766 N.E.2d at 629 ("Although the $995 payment from [the lender] to [the broker] is specified on the settlement statement, this after-the-fact method of 'disclosure' does not meet [the broker's] duty of full disclosure"); *Lashua v. Lakeside Title & Escrow Agency*, 2005 WL 844973 (Ohio Ct. App. April 11, 2005) at *5 (finding that a similar statement on a HUD-1 form "would not place [borrowers] on notice of this payment.").  Thus, there exists a genuine question as to whether, in the context of the entire transaction, the documents provided the Lees were sufficient to fulfill Stonefire's fiduciary responsibility to make a full disclosure of its fees.[4]

Stonefire and Deal insist, however, that the Lees should have hired a lawyer to review these documents if they were at all confused as to their meaning.  But to hold that a borrower could only fully protect his interests by hiring a lawyer, in addition to a mortgage broker, to represent him in a mortgage transaction would make such transactions unreasonably and unnecessarily expensive.  Such a holding would also be at odds with the concept of a mortgage broker having a close, fiduciary relationship with his client.

---

[4]

For the same reasons, there is a genuine issue of material fact as to whether Stonefire and Deal made "false or misleading statements of material fact" or "false promises regarding a material fact", or engaged "in conduct that constitutes improper, fraudulent, or dishonest dealings", in violation of the Ohio Mortgage Brokers Act, Ohio Rev. Code §1322.07. Contrary to Stonefire and Deal's contentions, the Ohio Mortgage Brokers Act "is not a variant on common law fraud, for which justifiable reliance must be proven," *Guth v. Allied Home Mtg. Capital Corp.*, 2008 WL 2635521 at *4 (Ohio App. 12th Dist. July 7, 2008), but instead requires a court to examine the broker's conduct throughout the entirety of the transaction. *Id.*

11

All of this is to underscore that "[w]hether a breach of fiduciary duty has occurred is a question of fact."  65 Am. Jur. Proof of Facts 3d 109 § 7.  Because there are genuine disputes as to the material facts underlying the Lees' breach of fiduciary duty, fraud, and Ohio Mortgage Brokers Act claims against Stonefire and Deal, summary judgment must be denied as to these claims.

**IV. Conclusion**

For the foregoing reasons, Countrywide and Bank of America's motion for summary judgment (Docs. 47, 48, 59)  is granted.  Stonefire's cross-motion for summary judgment (Doc. 75) is granted as to the civil conspiracy claim and denied otherwise. The Lees' cross-motion (Doc. 69) for summary judgment against Countrywide and for partial summary judgment against Stonefire (Doc. 69) are denied.  Kim Deal's motion for summary judgment (Doc. 78) is also denied.

IT IS SO ORDERED.

_s/ David A. Katz_____
DAVID A. KATZ
U. S. DISTRICT JUDGE